ERIKA M. ZIMMERMAN
Oregon Bar # 055004
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
7600 Sand Point Way, NE, c/o NOAA, DARC
Seattle, Washington 98117
erika.zimmerman@usdoj.gov

*Attorney for Plaintiff, the United States*

HOWARD FUNKE
ISB # 2720
Howard Funke & Associates, P.C.
P.O. Box 969
Coeur d'Alene, Idaho 83816-0969
Tel. (208) 667-5486
Fax (208) 667-4695
hfunke@indian-law.org

*Attorney for Plaintiff, the Coeur d'Alene Tribe*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE COEUR D'ALENE TRIBE,<br><br>        Plaintiffs,<br><br>    v.<br><br>DOUGLAS MINING COMPANY,<br><br>        Defendant. | Civ No. _____ |

The United States of America, by the authority of the Attorney General of the United States and acting at the request of the United States Environmental Protection Agency ("EPA"), the United States Department of the Interior ("DOI"), and the United States Department of Agriculture ("USDA"), and the Coeur d'Alene Tribe ("Tribe") by and through the undersigned attorneys file this complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action brought under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a) for recovery the United States' costs incurred or to be incurred in connection with mining-related contamination in Operable Unit 3 of the Bunker Hill Mining and Metallurgical Complex Superfund Site ("Operable Unit 3" or "Coeur d'Alene Basin Site") in northern Idaho and for damages for injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances in connection with the Coeur d'Alene Basin Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action, and the Defendant, pursuant to 28 U.S.C. §§ 1331, 1345, 1362 (federal-question jurisdiction suits "brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior") and 1367(a), and Sections 107 and 113 of CERCLA, 42 U.S.C §§ 9607 and 9613. The Tribe, which has a governing Tribal Constitution and Tribal Council duly recognized by the Secretary of the Interior, is an "Indian tribe" within the meaning of Section 101(36) of CERCLA, 42 U.S.C. § 9601(36).

3. Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and the threatened and actual releases of hazardous substances occurred, within this judicial district.

## DEFENDANT

4. Douglas Mining Company is an Idaho corporation. Douglas Mining Company was incorporated in Idaho in 1903. Douglas Mining Company owned and operated, and continues to own or operate, mining or milling related properties within Operable Unit 3, including the Douglas mine and mill property. From the early 1900s through at least the mid 1950s, Douglas Mining Company treated ore from the Douglas mine or other locations at its mill located within the Coeur d'Alene Basin.

5. Douglas Mining Company is a current "owner" and/or "operator" of a "facility" and was an "owner" and/or "operator" at the time of disposal of hazardous substances within the meaning of Sections 101(9) and (20) and 107(a)(1) and (2) of CERCLA, 42 U.S.C. §§ 9601(9) and (20) and 9607(a)(1) and (2).

6. Douglas Mining Company is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY FRAMEWORK

7. CERCLA provides that whenever any hazardous substance is released into the environment, or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance. 42 U.S.C. § 9604(a).

8. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan. . . .
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release . . .

9. Section 107(f)(1) of CERCLA, 42 U.S.C. § 9607(f)(1), provides:

> (1) Natural resources liability - In the case of injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) of this section liability shall be to the United States Government . . . and to any Indian tribe for natural resources belonging to, managed by, controlled by, or appertaining to such tribe, or held in trust for the benefit of such tribe, or belonging to a member of such tribe . . .

3

10. CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides, in pertinent part, that:

> In any such action described in this subsection [an action for recovery of costs under Section 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover response costs or damages.

11. By Executive Order 12580 of January 23, 1987, the President's functions under 42 U.S.C. § 9606(a) have been delegated to the Administrator of the EPA.

## SITE DESCRIPTION AND FACTUAL BACKGROUND

12. The Coeur d'Alene Basin encompasses the watershed of the Coeur d'Alene River and Coeur d'Alene Lake. The South Fork and North Fork of the Coeur d'Alene River flow into the main stem of the Coeur d'Alene River approximately twenty miles east of Lake Coeur d'Alene. Between the confluence and the mouth of the Coeur d'Alene River is an extensive system of lateral lakes and thousands of acres of associated wetlands. For purposes of this action, the Coeur d'Alene Basin refers to the watershed of the South Fork of the Coeur d'Alene River, the main stem of the Coeur d'Alene River and its floodplain, including the lateral lakes and associated wetlands, and Lake Coeur d'Alene.

13. Since the late 1800s, mining of metals, including silver, lead, zinc, cadmium, copper and gold, has occurred within the Coeur d'Alene Basin. Between the late 1800s and late 1960s, mining practices included disposal and release of mine tailings directly into and along the banks of the South Fork of the Coeur d'Alene River and its tributaries, or into numerous waste rock piles and tailings impoundments in the Basin drainage. Mining operations created numerous mine adits and other mine openings through which water contaminated with hazardous substances has been, and in many cases continues to be, released. In addition, smelter operations and other mine processes resulted in the release of hazardous substances by various pathways, including air emissions and discharges to water.

14. Over more than a hundred years, the mining and associated milling and smelting operations within the Coeur d'Alene Basin have resulted in massive releases of hazardous substances into the environment. Since the late 1800s, numerous mining and milling operations

have released an estimated 100 million tons of mining wastes into the river system. Over time, these wastes have been distributed over more than 160 miles of the Coeur d'Alene and Spokane Rivers, lakes and floodplains.

15. The Bunker Hill Mining and Metallurgical Complex Superfund Site was listed on EPA's National Priorities List in 1983. The Bunker Hill Site consists of three operable units. Operable Units 1 and 2 are located within a twenty-one square mile area, in the location of historic smelting operations, referred to as "the Box." EPA issued Records of Decision for Operable Units 1 and 2 in 1991 and 1992, respectively. The cleanup of Operable Units 1 and 2 is ongoing. Operable Unit 3 consists of the areas, located outside of the Box, where mining-related contamination has come to be located in the Coeur d'Alene Basin, adjacent floodplains, downstream water bodies, tributaries and fill areas.

16. In 1990, the Tribe and the United States began a joint Natural Resource Damage Assessment ("NRDA") in the Coeur d'Alene Basin. The Pre Assessment Screen was published in 1991. The Assessment Plan was published in 1993. The Report of Injury Assessment was completed and published in September 2000.

17. In 1991, the Tribe sued Asarco, Hecla and various other mining companies, as well as the Union Pacific Railroad, in the United States District Court for the District of Idaho. That suit sought to recover natural resource damages, under CERCLA, 42 U.S.C. §§ 9601 *et seq.*, caused by the release of mine tailings and other hazardous substances into the Coeur d'Alene Basin and the Lake over a 100 year period. *Coeur d'Alene Tribe v. ASARCO, et al.* (Civil Action No. 91-0342-N-HLR).

18. On March 22, 1996, the United States filed a complaint in the United States District Court for the District of Idaho against eight parties pursuant to Section 107(a) of CERCLA for the recovery of response costs and natural resource damages in connection with the Bunker Hill Mining and Metallurgical Complex Superfund Site. *U.S. v. ASARCO, et al.* (Civil Action No. 96-0122-N-EJL).

19. In September 1996, the Court granted a motion to consolidate the United States' and Tribe's actions under CERCLA related to the Bunker Hill Mining and Metallurgical Complex Superfund Site.

20. On August 29, 1997, the United States and the Tribe filed a joint motion to amend the complaints to add twenty-three defendants, including Douglas Mining Company. On March 31, 1998, the Court denied the motion to amend the complaints without prejudice.

21. In 1998, EPA initiated a Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 3.

22. On September 12, 2002, EPA issued an interim Record of Decision, which addresses the first phase of a comprehensive remedy for Operable Unit 3.

23. EPA has incurred response costs for Operable Unit 3.

24. EPA will continue to incur response costs for Operable Unit 3.

25. Pursuant to section 107(f) of CERCLA, 42 U.S.C. § 9607(f), the United States and the Tribe are co-trustees for certain natural resources in the Coeur d'Alene Basin Site, including but not limited to, fish, wildlife birds, biota, and water.

## **GENERAL ALLEGATIONS**

26. The mining or milling related properties owned or operated by Douglas Mining Company within Operable Unit 3, including the Douglas mine and associated mill, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

27. There have been releases within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, including cadmium, lead, zinc, and other toxic metals, into the environment from these facilities in Operable Unit 3.

28. Cadmium, lead, and zinc, as well as other toxic metals, are defined as a "hazardous substances" pursuant to Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

29. The releases or threatened releases of hazardous substances have caused the United States to incur response costs as defined by Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), in connection with Operable Unit 3.

30. In performing response actions within Operable Unit 3, the United States has incurred and will continue to incur response costs. The United States' costs of response actions are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

31. The releases or threatened releases of hazardous substances in the Coeur d'Alene Basin have caused injuries to certain migratory natural resources within Operable Unit 3, including fish, wildlife, birds, biota, and water, as well as federal and tribal land.

## FIRST CLAIM FOR RELIEF
### (Response Costs)

32. The allegations of the foregoing paragraphs are incorporated herein by reference.

33. Pursuant to Section 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (2), Douglas Mining Company is liable to the United States for the response costs incurred or to be incurred by the United States in connection with Operable Unit 3 of the Bunker Hill Mining and Metallurgical Complex Superfund Site.

34. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Douglas Mining Company is liable for a "declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs."

## SECOND CLAIM FOR RELIEF
### (Natural Resource Damages)

35. The allegations of the foregoing paragraphs are incorporated herein by reference.

36. Pursuant to Section 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (2), Douglas Mining Company is liable to the United States and the Coeur d'Alene Tribe for damages for injury to natural resources resulting from the discharges or releases of hazardous substances in Operable Unit 3 of the Bunker Hill Mining and Metallurgical Complex Superfund Site, including the cost of assessing such damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the Coeur d'Alene Tribe, respectfully request that the Court:

1. Award the United States a judgment against Douglas Mining Company for all costs incurred or to be incurred by the United States in connection with Operable Unit 3 of the Bunker Hill Mining and Metallurgical Complex Superfund Site, plus interest;

2. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), enter a "declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs."

3. Award the United States and the Coeur d'Alene Tribe a judgment against Douglas Mining Company for damages for injury to natural resources resulting from the discharges or releases of hazardous substances in Operable Unit 3 of the Bunker Hill Mining and Metallurgical Complex Superfund Site, including the cost of assessing such damages; and

4. Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

Date: October 26, 2010

/s Ignacia S. Moreno
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s Erika M. Zimmerman
ERIKA M. ZIMMERMAN
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-5270
Facsimile: (202) 514-4180
erika.zimmerman@usdoj.gov

WENDY J. OLSON
United States Attorney
District of Idaho

NICHOLAS J. WOYCHICK
Civil Chief
U.S. Attorney's Office
District of Idaho
WGI Plaza IV
800 Park Blvd., Suite 600
Boise, Idaho 83712
(208) 334-1211
Nick.Woychick@usdoj.gov

FOR THE COEUR D'ALENE TRIBE:

  /s Howard A. Funke
HOWARD A. FUNKE
Howard Funke & Associates, P.C.
Special Counsel
Coeur d'Alene Tribe
P.O. Box 969
Coeur d'Alene ID 83816-0969
Tel. (208) 667-5486
Fax (208) 667-4695
hfunke@indian-law.org
*Attorney for Plaintiff, Coeur d'Alene Tribe*

OF COUNSEL FOR THE UNITED STATES:

CARA STEINER-RILEY
KELLY COLE
U.S. Environmental Protection Agency, Region 10

BARRY STEIN
U.S. Department of the Interior

DIANE M. CONNOLLY
U.S. Department of Agriculture